### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PHILIP KREMENTZ,** <br> **#R41285,** <br><br>                 **Plaintiff,** <br><br> **v.** <br><br> **DR. SIDDIQUI, and** <br> **JOHN DOE,** <br><br>                 **Defendants.** | **Case No. 20-cv-01358-SPM** |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Philip Krementz an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Krementz claims that due to unsafe conditions in the shower area, he fell, sustaining injuries to his right arm, elbow, and hand. He subsequently received inadequate medical treatment for his injuries. He seeks monetary damages and declaratory and injunctive relief.

The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

#### THE COMPLAINT

Krementz alleges the following: In North II Cellhouse at Menard, where Krementz was

Page 1 of 11

housed, there are three shower rooms. (Doc. 1, p. 18-19). Each room has ten shower heads and are not well ventilated. Normally, large movable fans are placed in the shower area to mitigate the temperature and humidity. On May 3, 2019, when Krementz went to the shower room there were no fans. He and other inmates were locked in the shower room for thirty to forty minutes. After showering, while waiting to return to his cell, Krementz passed out and fell due to the overwhelming heat and humidity, injuring his arm, elbow, and hand. (*Id.* at p. 4, 19). After his fall, he was immediately seen by RN Zimmer with complaints of pain and numbness in his right arm and hand. RN Zimmer ordered an x-ray of his right elbow. An x-ray was taken on March 7, 2019. (*Id.*).

By March 22, 2019, Krementz had still not received the results back from his x-ray. (Doc. 1, p. 4). He informed a nurse during nurse sick call line that he had not received the x-ray results and that he still had significant pain "with movement in [his] elbows." The nurse referred him to the nurse practitioner/medical doctor call line. (*Id.*).

Krementz had an appointment with Dr. Siddiqui on April 2, 2019. (Doc. 1, p. 4). Dr. Siddiqui reported that the x-ray looked "pretty normal with arthritis consistent with age." Krementz complained to Dr. Siddiqui of pain, numbness, and muscle weakness in his right lower arm from elbow to hand. (*Id.*). Dr. Siddiqui and the nurse noted swelling in the right elbow. (*Id.* at p. 5). The swelling was the size of a golf ball and filled with fluid. The area was very sensitive and painful to pressure. Dr. Siddiqui prescribed ibuprofen and submitted a request to collegial review for Krementz to receive a nerve conductivity study. (*Id.*). The request, however, did not provide sufficient information. Dr. Siddiqui did not report Krementz's initial injury to his elbow, the bone chips that were seen in the x-rays, or swelling and pain as noted by medical staff. (*Id.* at p. 22).

Krementz saw Dr. Siddiqui again on April 23, 2019. (Doc. 1, p. 5). He again complained of numbness and pain in his right hand. Dr. Siddiqui informed Krementz that the nerve

conductivity study requested had been denied. An alternative treatment plan was ordered, which included a soft wrist splint and a course of steroids. (*Id.*). Krementz never received this treatment, the splint or the steroids. (*Id.* at p. 22).

Krementz attempted to see a nurse on the sick call line on June 7, 2019, about lingering pain and numbness. (Doc. 1, p. 5). The nurse required a $5 co-pay before any evaluation. Krementz did not pay the fee because he is indigent and because the issues with his elbow were on-going. The nurse then refused to see him for treatment. (*Id.*).

Krementz saw a nurse on June 25, 2019, for continuing numbness, pain, and weakness in his lower right arm. (Doc. 1, p. 6). He was given acetaminophen and ibuprofen and scheduled to see a doctor. Krementz saw a nurse practitioner on June 28, 2019. The ibuprofen was discontinued, and Krementz was prescribed diclofenac. (*Id.*).

On September 3, 2019, Krementz had a physical exam. (Doc. 1, p. 6). He complained of tingling, numbness, and pain in his hands. The nurse practitioner noted thinning of the right hand, especially between the thumb and index fingers. He was referred to see the doctor. Krementz saw Dr. Siddiqui on September 10, 2019. Dr. Siddiqui confirmed that Krementz had muscle atrophy in the right hand and resubmitted a request to collegial review for Krementz to have a nerve conductivity study. (*Id.*). This time, more complete information was provided by Dr. Siddiqui regarding Krementz's condition. (*Id.* at p. 23). The request was approved, and a nerve conductivity study performed on October 28, 2019. (*Id.* at p. 7). Krementz did not see a doctor regarding the results from the study.

On December 10, 2019, Krementz saw an orthopedic specialist. (Doc. 1, p. 7). More x-rays were taken, which showed several bone chips round his right elbow. He was diagnosed with cubital tunnel syndrome and severe changes of the ulnar nerve. The treatment is ulnar nerve transposition surgery. (*Id.*).

On January 27, 2020, Krementz had surgery on his elbow, and his right arm was put into a hard cast. (Doc. 1, p. 8). Following surgery, he was admitted to the healthcare unit for post-operative observation and treatment, where he stayed from January 27, 2020 through February 27, 2020. In the healthcare unit he was given pain medication and a sling for his right arm. On February 12, 2020, he went back to the orthopedic specialist for a follow-up exam. His cast and stitches were removed. Krementz was readmitted to the healthcare unit upon his return to Menard. On February 17, 2020, Krementz saw Dr. Siddiqui. Krementz complained he was still having pain and continual weakness from his right elbow and below. (*Id.*). On February 27, 2020, Krementz was seen again by Dr. Siddiqui and discharged from the healthcare unit. (*Id.* at p. 9). The sling was confiscated, and he was returned to his cell.

On March 3, 2020, Krementz saw Dr. Siddiqui for an additional post-surgery follow up appointment. (Doc. 1, p. 9). Krementz was given band aids for small wounds caused by the stitches. Dr. Siddiqui also submitted a request to collegial review for Krementz to have an additional appointment with the orthopedic specialist. (*Id.*).Krementz did not have another appointment with the orthopedic specialist. (*Id.* at p. 24).

On March 5, 2020, Krementz began physical therapy. (Doc. 1, p. 9). He had therapy a couple times a week for several weeks. Krementz was also taught additional exercises to perform. (*Id.*).

On May 20, 2020, Krementz attended nurse sick call line for significant pains in his elbow. (Doc. 1, p. 10). He was given Tylenol and referred to the doctor. Krementz saw Dr. Siddiqui on June 2, 2020. Krementz told Dr. Siddiqui that his was still having pain in his elbow and requested another x-ray and more Tylenol and ibuprofen. (*Id.*). Dr. Siddiqui told Krementz that he would not be receiving anymore x-rays or pain medicine. (*Id.* at p. 11). Dr. Siddiqui increased Krementz's prescription for Pamelor. (*Id.*).

On July 4, 2020, Krementz felt his elbow "pop," and he experienced severe pain. (Doc. 1, p. 11). He could not raise his lower arm over 90 degrees. The gallery officer provide Krementz some ice to relieve the pain. His elbow "popped" again on July 20, August 5, and August 7. Each time he had severe pain and discomfort and limited range of motion. (*Id.*).

Krementz was seen by a nurse on August 7, 2020, who provided him Tylenol and referred him to see the doctor. (Doc. 1, p. 12). He saw Dr. Siddiqui on August 13, 2020. Dr. Siddiqui prescribed him ibuprofen and put in an order for Krementz to have an x-ray. (*Id.*).

DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

| | |
|---|---|
| **Count 1:** | Eighth Amendment claim against Dr. Siddiqui for the delay and denial of medical treatment for Krementz's right arm and elbow injury. |
| **Count 2:** | State law medical negligence claim against Dr. Siddiqui the delay and denial of medical treatment for Krementz's right arm and elbow injury. |
| **Count 3:** | Eighth Amendment conditions of confinement claim against John Doe for failing to maintain necessary ventilation in the shower area. |
| **Count 4:** | State law negligence claim against John Doe for failing to maintain necessary ventilation in the shower area. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

### Count 1

Krementz claims that Dr. Siddiqui acted with deliberate indifference towards his serious medical needs by (1) failing to properly diagnose and treat the bone chips in his right elbow; (2) failing to implement the alternative treatment plan as directed by Dr. Ritz; and (3) denying a follow up exam with the orthopedic specialist following his surgery. (Doc. 1, p. 24-25).

At this point, Krementz has sufficiently pled an Eighth Amendment claim for deliberate indifference, and Count 1 will proceed against Dr. Siddiqui. *See Berry v. Peterman,* 604 F. 3d 435, 441 (7th Cir. 2010) (significant delay in effective medical treatment may support a claim of deliberate indifference).

### Count 2

Krementz also asserts his that Dr. Siddiqui's conduct constitutes "the tort of negligence under the law of the State of Illinois." (Doc. 1, p. 24). The allegations of negligence derive from the same facts as the federal constitutional claim, so this Court will exercise supplemental jurisdiction over the claim. *See* 28 U.S.C. § 1367(a) (district court has supplemental jurisdiction over state law claims that "are so related to [the federal law claims] that they form part of the same case or controversy under Article III of the United States Constitution").

But, Krementz has not provided the affidavit and medical report required under Illinois state law, 735 ILCS § 5/2-622. If he intends to proceed with this claim, Krementz must file an affidavit stating that "there is a reasonable and meritorious cause" for litigation of the medical malpractice claim, along with a physician's report in support of the affidavit. *See Young v. United States,* 942 F.3d 349 (7th Cir. 2019). Krementz must comply with the requirements set forth in 735 ILCS § 5/2-622 before the summary judgment phase of the case. *Id.* Failure to do so at this point is not dispositive of his claim. *Id.* Therefore, Count 2 shall proceed against Dr. Siddiqui.

**Count 3**

Krementz claims that John Doe Correctional Officer, who was in charge of five gallery shower lines, acted with deliberate indifference towards his safety and security by failing to maintain necessary ventilation in the shower areas. (Doc. 1, p. 3, 23).

A claim for unconstitutional conditions of confinement has two elements. First, the plaintiff must plead that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 834, 837 (1994). Second, the plaintiff must plead that the defendants acted with a sufficiently culpable state of mind, namely, deliberate indifference. *McNeil v. Lane,* 16 F.3d 123, 12 (7th Cir. 1993). Additionally, Section 1983 liability is predicated on fault, so to be liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir.2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir.2001)). "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Ames v. Randle,* 933 F.Supp.2d 1028, 1037–38 (N.D.Ill.2013) (quoting *Sanville,* 266 F.3d at 740).

The Court does not find that Krementz has sufficiently pled an Eighth Amendment claim against John Doe. Other than stating that John Doe is responsible for five gallery shower lines, Krementz has not described John Doe's involvement regarding the conditions in the shower room on March 3, 2019. *See Burks v. Raemisch,* 555 F.3d 592, 596 (7th Cir. 2009) ("public employees are responsible for their own misdeeds but not for anyone else's."). Section 1983 does not impose a "general duty of rescue," *Id.*, and there are no facts in the Complaint alleging that John Doe knew that the heat and poor ventilation posed a substantial risk of harm to Krementz and then disregarded that risk. Thus, Krementz has not sufficiently pled an Eighth Amendment claim against John Doe, and Count 3 is dismissed without prejudice.

**Count 4**

Krementz may have a state law negligence claim against John Doe for the unsafe shower conditions, but because he has failed to state a federal law claim regarding the same set of facts, the Court will not exercise supplemental jurisdiction over Count 4. The Court takes no position on the merits or viability of such a claim. Count 4 is dismissed without prejudice.

**MOTION FOR RECRUITMENT OF COUNSEL**

Krementz has filed a motion, a memorandum of law in support, and a supplement asking the Court to recruit counsel on his behalf. (Doc. 9, 10, 12). Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

In an effort to obtain counsel on his own, Krementz discloses that he has written six different law firms and has not received any responses. Thus, he appears to have made reasonable efforts to retain counsel on his own before seeking assistance from the Court. With respect to his ability to pursue this action *pro se*, it is clear to the Court that he does not have the capabilities to litigate this case himself. He suffers from mental disorders including schizoaffective disorder and has been designated as severely mentally ill (SMI). He is currently taking three different medications for his conditions that have impacted his intellectual capacity and ability to communicate with others. The medications also cause him to sleep 18 hours a day. Krementz's Complaint and subsequent motions have been drafted with the assistance of other inmates at Menard, and it is likely the current inmate helping him will be transferred soon. (Doc. 12, p. 1). These inmates attest that Krementz is not able to represent himself. (Doc. 10, p. 8; Doc. 12, p. 19).

Page 8 of 11

Specifically, Tom Tuduj states that Krementz will forget what he is saying in the middle of a conversation, and his hands shake so that his writing is not legible. Due to Krementz's mental health issues and physical impairment, the Court finds that the complexity of this case is too challenging for Krementz to continue pro se. The Motion for Recruitment of Counsel is **GRANTED**. (Doc. 9). Counsel will be recruited by separate order.

DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNTS 1** and **2** will proceed against Dr. Siddiqui. **COUNTS 3** and **4** are **DISMISSED without prejudice**. Because there are no surviving claims against John Doe, he is **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to terminate John Doe as a defendant.

Because Krementz's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Motion for Recruitment of Counsel is **GRANTED.** (Doc. 9). Counsel will be recruited by separate order.

The Clerk of Court shall prepare for Dr. Siddiqui the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant can no longer be found at the work address provided by Krementz, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant only need to respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Krementz and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Krementz is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 10, 2021**

　　　　　　　　　　　　　　　　　 *s/ Stephen P. McGlynn*
　　　　　　　　　　　　　　　　　**STEPHEN P. MCGLYNN**
　　　　　　　　　　　　　　　　　**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.