UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PHILIP KREMENTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-cv-01358-GCS |
| | ) |
| MOHAMMED SIDDIQUI & | ) |
| STEPHEN RITZ, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Pending before the Court is Defendant, Dr. Stephen Ritz's ("Ritz"), Motion for Partial Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 84). Defendant Ritz filed the Motion for Summary Judgment along with a Memorandum in Support on March 29, 2024. (Doc. 84, 85). Plaintiff, Philip Krementz ("Krementz"), filed a Response and Memorandum in Opposition on June 4, 2024. (Doc. 91, 92). For the reasons delineated below, Defendant's Motion for Partial Summary Judgment is **DENIED**. (Doc. 84). A hearing was held on Defendant Ritz's motion on January 16, 2025, wherein the Court heard the testimony of the Plaintiff and arguments of the parties. (Doc. 97). The Court took the matter under advisement. *Id.*

### Procedural Background

Plaintiff Krementz, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Hill Correctional Center ("Hill"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred while

he was housed at Menard Correctional Center ("Menard"). *See generally* (Doc. 1).

Plaintiff filed his Initial Complaint with the Court on December 22, 2020. (Doc. 1). In his Initial Complaint, Plaintiff alleges that that shower area at Menard was kept in an unsafe condition, which led to him falling and sustaining injuries to his right arm, elbow, and hand. (Doc. 1, p. 4). Plaintiff also alleges that he subsequently received inadequate medical care for these injuries. *Id.* at p. 4-12. As relief, Plaintiff requested monetary damages as well as declaratory and injunctive relief. *Id.* at p. 26-27.

On December 10, 2021, the Court completed a preliminary review of Plaintiff's Initial Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 14). The Court construed Plaintiff's allegations into the following claims:

> **Count 1:** Eighth Amendment claim against Dr. Siddiqui for the delay and denial of medical treatment for Krementz's right arm and elbow injury.
>
> **Count 2:** State law medical negligence claim against Dr. Siddiqui for the delay and denial of medical treatment for Krementz's right arm and elbow injury.
>
> **Count 3:** Eighth Amendment conditions of confinement claim against John Doe for failing to maintain necessary ventilation in the shower area.
>
> **Count 4:** State law negligence claim against John Doe for failing to maintain necessary ventilation in the shower area.

(Doc. 14, p. 5). Plaintiff was permitted to proceed on Counts 1 and 2 against Defendant Siddiqui. *Id.* at p. 9. However, Plaintiff's claims against John Doe were dismissed without prejudice for failure to state a claim. *Id.* at p. 7-8.

The Court also considered Plaintiff's Motion for Recruitment of Counsel within the 1915A Screening Order. (Doc. 14, p. 8-9). The Court concluded that due to Plaintiff's

designation as severely mentally ill ("SMI") and his physical impairments, that the complexity of this case was too challenging for Plaintiff to continue as *pro se*. *Id.* at p. 9. Accordingly, on December 21, 2021, the Court assigned Attorney Joseph S. Pappas to represent Plaintiff moving forward. (Doc. 19).

On July 15, 2022, Plaintiff filed a Motion for Leave to File an Amended Complaint. (Doc. 35). Plaintiff's Proposed Amended Complaint sought to add claims against Wexford Health Sources, Inc. ("Wexford"), Defendant Ritz, and LPN Locke ("Locke"). (Doc. 37, Exh. 1). The Court only granted Plaintiff's Motion for Leave to File an Amended Complaint with respect to his allegations against Defendant Ritz. (Doc. 42, p. 4-5). Plaintiff added an Eighth Amendment Claim for delay and denial of medical treatment as well as a medical malpractice claim for negligent treatment against Defendant Ritz. (Doc. 43, p. 5-7). In Plaintiff's Amended Complaint, Plaintiff alleges that on April 4, 2019, Defendant Ritz denied Plaintiff a referral for a nerve conductive study despite the fact he complained of numbness, swelling, and weakness, and instead pursued less efficacious treatment for his right arm injuries until September 18, 2019. *Id.* at p. 7. Plaintiff complains that he endured six months of constant suffering from the pain due to the delayed referral. *Id.*

## FACTUAL BACKGROUND

Both Plaintiff and Defendant have limited their discussion for exhaustion of administrative remedies to two grievances within Plaintiff's grievance record. (Doc. 85, p. 2-3; Doc. 91, p. 1-2). The Court will focus its analysis of exhaustion of administrative remedies on these two relevant grievances.

*1.     Grievance No. 106-3-20*

Plaintiff submitted Grievance No. 106-3-20 to the Counselor at Menard on March 3, 2020. (Doc. 85, Exh. 1, p. 8). In the introductory paragraph of the grievance, Plaintiff stated:

> This is a replacement grievance to one that was submitted and lost on 1-27-2020. Counselor quick responded on March 1, 2020 that no grievance was found in the computer. The original grievance was filed on 1-26-2020 . . . . I learned this when returning to my cell on 2-28-2020 whereas I wrote the counselor.

(Doc. 85, Exh. 1, p. 8). The grievance then complained about the removal of the fans in the shower areas at Menard and alleged that temperatures and humidity in the shower area caused Plaintiff to faint and injure his right elbow. *Id.* at p. 9. Plaintiff also complained about the medical treatment he received for his right arm injury, writing: "Dr. Siddiqui *et al.*, for letting a serious medical condition persist to the point of now needing significant surgery with probable long-term issues in [his] right hand/elbow." *Id.* (emphasis added).

The Grievance was received by the Counselor on March 11, 2020. (Doc. 85, Exh. 1, p. 8). The Counselor responded to Plaintiff on April 24, 2020, stating that Plaintiff should refer to the attached response from healthcare. *Id.* The healthcare response stated that Plaintiff was evaluated by a physical therapist on March 5, 2020, and started physical therapy on March 9, 2020. *Id.* at p. 13. The Counselor also reiterated that a grievance dated January 26, 2020, was never received by the Grievance Office and that receipts for grievances submitted by inmates should be issued within five days of submission. *Id.* at p. 8. Lastly, the Counselor noted that fans are placed by the showers. *Id.*

Plaintiff appealed Grievance No. 106-3-20 to the Grievance Officer on May 18, 2020. (Doc. 85, Exh. 1, p. 6). On May 19, 2020, the Grievance Officer recommended that Plaintiff's grievance be denied. *Id.* The Chief Administrative Officer ("CAO") concurred with the Grievance Officer's response on May 20, 2020. *Id.* Plaintiff appealed the Grievance to the Administrative Review Board ("ARB") on June 9, 2020. *Id.* The ARB received Plaintiff's Grievance on June 12, 2020. (Doc. 85, Exh. 1, p. 5). On August 24, 2020, the ARB determined that Plaintiff failed to follow Department Rule 504 and that the issue would not be addressed further. *Id.*

2.   *Grievance No. 59-6-20*

Plaintiff submitted Grievance No. 59-6-20 as an emergency grievance on June 2, 2020. (Doc. 85, Exh. 1, p. 4). In the grievance, Plaintiff complains about medical care that he received from Defendant Dr. Siddiqui on June 2, 2020. *Id.* Plaintiff alleges that despite his complaints of pain after surgery performed on January 27, 2020, Siddiqui refused to authorize follow-up with a specialist or any additional diagnostic x-rays. *Id.*

On June 5, 2020, the CAO expedited Plaintiff's grievance as an emergency grievance. (Doc. 85, Exh. 1, p. 4). On June 6, 2020, the Grievance Officer recommended that Plaintiff's Grievance be deemed moot, as "[t]he offender ha[d] been treated as medical professionals deem[ed] appropriate." *Id.* at p. 2. The Grievance Officer also noted that "[t]he offender will be scheduled for his follow up appointment once furloughs resume." *Id.* The CAO concurred with the Grievance Officer's determination on June 11, 2020. *Id.* Plaintiff appealed the Grievance to the ARB on June 14, 2020. *Id.* The Grievance was received by the ARB on June 17, 2020, and deemed moot on November 24, 2020.

(Doc. 85, Exh. 1, p. 1).

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. Proc. 56(a). To survive a motion for summary judgement, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role is to determine whether a genuine issue of material fact exists rather than evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter when determining the outcome for a motion for summary judgement. *See National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that, "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is left to the Court to determine whether an inmate has exhausted his or her remedies when the affirmative defense of non-exhaustion is raised. If the court finds that the inmate failed to exhaust administrative remedies, then the inmate is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent. *Id* at 742. If the court determines that the failure to exhaust was the inmate's fault, then the case is over. *Id*.

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of

this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This coincides with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). It affords prison administrators an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

Inmates must follow their prison's administrative rules when attempting to exhaust their administrative remedies under the PLRA. *See Pozo*, 286 F.3d at 1023. Plaintiff is an inmate in the IDOC and is required to correctly follow the regulations contained in the IDOC's Grievance Procedures to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The Seventh Circuit requires strict adherence to a prison's grievance procedures in order to satisfy the requirements for exhaustion under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The exhaustion requirement cannot be satisfied if an inmate files untimely or procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Additionally, an inmate must correctly complete all of the steps outlined in the grievance procedures and is barred from filing suit prior to any step being completed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); 42 U.S.C. § 1997e(a). If an inmate fails to complete all of the steps correctly to exhaust his claim, then "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be

indefinitely unexhausted." *Dole*, 438 F.3d at 809. However, inmates are not required to exhaust administrative remedies that are unavailable to them which can occur if, "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

The IDOC Grievance Procedures require that an inmate first file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The Grievance must include, "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *See* 20 ILL. ADMIN. CODE § 504.810(c). If the inmate is unsatisfied with the counselor's response, then the inmate can submit a formal grievance to the prison's grievance officer. *Id* at (a)-(b). The grievance officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of the receipt of the grievance, the grievance officer must report their findings and recommendations in writing to the CAO. *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO will then review the findings and recommendations and offer a written decision to the inmate. *Id*. The inmate can appeal the CAO's decision to the ARB within thirty days. *See* 20 ILL. ADMIN. CODE § 504.850(a). To do this correctly, the inmate is required to attach copies of the grievance officers report and the CAO's decision to his appeal. *Id*. The ARB then submits its findings and recommendations to the Director who will issue the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)-(e).

## DISCUSSION

Defendant Ritz presents two arguments in support of his motion for summary judgment. First, he argues that Plaintiff failed to exhaust his administrative remedies because his Grievance No. 106-3-20 was filed outside the 60-day window permitted under IDOC Grievance Procedures. Second, Ritz contends that Grievance Nos. 106-3-20 and 59-6-20 fail to expressly name or otherwise provide factual details sufficient to identify him.[1] (Doc. 85, p. 6-7).

As to Defendant Ritz's timeliness argument, the Seventh Circuit considered a similar issue in *Dole v. Chandler*, 438 F.3d 804, 810-813 (7th Cir. 2006). In *Dole*, a plaintiff housed at Tamms Correctional Center filed a grievance complaining about excessive force used against him while at Menard using the only procedure available to him for mailing grievances: placing it in the "chuckhole" of his cell for the guard to pick up and mail. *Id.* at 807. After approximately 3 months had passed, the plaintiff discovered that the ARB had no record of his grievance. *Id.* The plaintiff did not receive further instructions from the ARB on how to re-file his grievance, nor did he so attempt. *Id.* at p. 808, 813. Based on those facts, the Seventh Circuit found that the plaintiff "properly followed procedure and the prison officials were responsible for mishandling of his grievance." *Id.* at 811. Therefore, even though the 60-day deadline has passed, the Seventh Circuit found that "because [the plaintiff] took all steps necessary to exhaust one line of

---

[1] 20 ILL. ADMIN. CODE § 504.810(c) requires grievances contain "factual details . . . including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint."

administrative review, and did not receive instructions on how to proceed once his attempts were foiled, in the factual context of this case, he ha[d] exhausted his administrative remedies under the PLRA." *Id.* at 813.

Here, as in *Dole*, Plaintiff claimed that he submitted a grievance within the 60-day statutory period, but that it was lost through no fault of his own. (Doc. 85, Exh. 1, p. 8). He noted that Grievance No. 106-3-20 was a "replacement grievance to one that was submitted and lost on 1-27-20." *Id.* He further stated that the "the original grievance was filed on 1-26-2020[,]" but he did not learn it was lost until "returning to [his] cell on 2-28-20." *Id.* However, unlike *Dole*, Defendant does not admit that Plaintiff submitted the "lost" grievance. *Dole*, 438 F.3d at 807. Instead, in response to Grievance No. 106-3-20, the Counselor stated that there was no record of the Grievance Office receiving a grievance dated January 26, 2020. (Doc. 85, Exh. A, p. 8). Additionally, the prison in *Dole* did not provide receipts for mailed grievances, *Dole*, 438 F.3d at 810, whereas the Counselor noted here that receipts for grievances should be issued within five days of submission. (Doc. 85, Exh. A, p. 8).

These minor differences ultimately do not persuade the Court that the result here should differ from that in *Dole*. Plaintiff claims that his first grievance was lost after he submitted it on January 26 or 27, 2020. (Doc. 85, Exh. A, p. 8). Nevertheless, the ARB denied Grievance No. 106-3-20 for failing to follow Department Rule 504. *Id.* at p. 5. Now, if Plaintiff's version of events is true, he did what he could to exhaust his administrative remedies, and he is not at fault for his grievance being lost. Moreover, it is not Plaintiff's responsibility to prove that he submitted a grievance which was lost. Instead, the

exhaustion requirement is an affirmative defense for which Defendant bears the burden of proof. *See Pavey,* 663 F.3d 899, 903 (7th Cir. 2011). Stated differently, it is Defendant's burden to provide evidence that Plaintiff did *not* file a timely grievance. Based on Plaintiff's statement in Grievance No. 106-3-20 that he submitted a grievance in January 2020 that was lost, there is conflicting evidence, and the Court declines to find that Plaintiff failed to timely exhaust.

Next, Defendant Ritz argues that Plaintiff failed to sufficiently identify him in either Grievance No. 106-3-20 or 59-6-20. (Doc. 85, p. 6-7). The Court is ultimately unpersuaded by this argument. "While grievances must contain factual details regarding each aspect of the inmate's complaint, including the name of each person who is the subject or is otherwise implicated in the complaint, this condition is tempered in that an offender who does not know the name of each person who is involved in the complaint may simply describe the individual with as much detail as possible." *Williams v. Spiller*, Case No. 22-cv-756-RJD, 2024 WL 3673152, at *5 (S.D. Ill. Aug. 6, 2024) (citing ILCS § 504.810(c)). The Seventh Circuit has interpreted this as requiring an inmate to name individuals only to the extent practicable to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011); *see also Glick v. Walker*, No. 09-2472, 385 Fed. Appx. 579, 582 (7th Cir. July 13, 2010). Thus, not naming the defendants in the grievance itself amounts to "'a mere technical defect' where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond." *Saffold v. Illinois Department of Corrections*, No. 18 C 3301, 2021 WL 4477930, at *7 (N.D. Ill. Sept. 30, 2021) (quoting

*Maddox*, 655 F.3d at 722). So long as the "prison officials have been afforded an opportunity to address an inmate's claims internally prior to federal litigation, the purpose of exhaustion has been met, and the prisoner has properly exhausted his available remedies." *Bandala-Martinez v. Bebout*, 188 F. Supp.3d 836, 842-843 (S.D. Ill. 2016) (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). Accordingly, an inmate is not required to provide personal notice of suit to an individual defendant through his grievance. *See Maddox*, 655 F.3d at 722 (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

In Grievance No. 106-3-20, Plaintiff directs his complaint to "Dr. Siddiqui *et al.*, for letting a serious medical condition persist to the point of now needing significant surgery with probable long-term issues in [his] right hand/elbow." *Id.* (emphasis added). In light of Plaintiff's allegations against Defendant Ritz for denying him a referral to further treat his right arm injuries, it appears that Plaintiff intended to include Ritz by reference to "Dr. Siddiqui *et al*" in his grievance. Accordingly, Plaintiff's failure to otherwise name Defendant Ritz is a mere technical defect which described the alleged mistreatment of his right arm injuries with sufficient detail to provide prison officials the opportunity to investigate the underlying conduct. *See Maddox*, 655 F.3d at 722. As the purpose of exhaustion was met, the Court finds that Plaintiff exhausted his administrative remedies.

## CONCLUSION

For the reasons outlined above, Defendant's Motion for Partial Summary Judgment is **DENIED**. (Doc. 84).

IT IS SO ORDERED.

DATED: March 31, 2025.

GILBERT C. SISON
United States Magistrate Judge